**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**SOLON PHILLIPS**, as member-trustee of
**REMUS ENTERPRISES, 1 LLC**,

Plaintiff,

v.

**WCP FUND I LLC**,

Defendant.

---

Case No. 1:24-cv-03366 (TNM)

**MEMORANDUM OPINION**

If you take out a loan, payback is all but inevitable.  When Plaintiff Remus Enterprises did not repay two commercial loans from Defendant WCP Fund to buy and flip a house, Remus had to pay loan extension fees for several months until it eventually lost the property to foreclosure.

Remus already unsuccessfully sued WCP in the Superior Court of the District of Columbia last year.  Now, trying again here, the company alleges violations of the Real Estate Settlement Procedures Act (RESPA) and the Truth in Lending Act (TILA), breach of contract, promissory estoppel, duress and unconscionability, and unjust enrichment.  WCP moves to dismiss.  The Court will grant the motion because most of Remus's claims are precluded by its first suit and the rest fail to state a claim.

**I.**

Remus buys, renovates, and re-sells residential homes in Washington, D.C.  Am. Compl. ¶ 7, ECF No. 14.  WCP is a lender for real estate investors.  Am. Compl. ¶ 2.  Remus obtained two loans from WCP to buy a property on Tennessee Avenue in Washington, D.C., one for $820,250 and one for $48,250.  Am. Compl. ¶ 18.  After unexpected permitting delays and a

spike in interest rates, Remus failed to make payments on either loan.  Am. Compl. ¶ 44.  Remus

alleges that WCP agreed to accept all outstanding payments on the loans after the property sold.

Am. Compl. ¶ 47.  The parties had made a similar agreement for a loan on a separate property on

8th Street, which WCP honored.  Am. Compl. ¶¶ 48–49.

But WCP's patience wore thin for the Tennessee Avenue property.  While waiting for the

home to sell, WCP demanded that Remus sign four loan-extension agreements that delayed the

maturity dates to March 2024, then to June.  Am. Compl. ¶¶ 50–51, 64–66; Loan Modifications,

ECF Nos. 15-6, 15-7, 15-8, 15-9.  Each time Remus absorbed modification fees that ranged from

around $500 to nearly $16,500.  *E.g.*, Loan Modification, ECF No. 15-6, at 2; Loan

Modification, ECF No. 15-9, at 2.  In March 2024, Remus sued WCP in Superior Court for

violating the Mortgage Lender and Broker Act and the Interest and Usury Statute.  *Phillips et al.

v. DP Cap., LLC*, No. 2024-CAB-001373, (D.C. Super. Ct. June 17, 2024).  That court granted

WCP's motion to dismiss the case for failing to state a claim.  *Id.*  The dismissal was affirmed on

appeal.  *Phillips et al. v. DP Cap., LLC, et al.*, No. 24-cv-0635 (D.C. Aug. 4, 2025).

Eventually, Remus reduced the price and ratified a contract for sale of the Tennessee

Avenue property.  Am. Compl. ¶ 65.  But the sale did not go through before the loans came due

in June 2024.  Loan Modification, ECF No. 15-8 at 2; Loan Modification, ECF No. 15-9, at 2.

WCP demanded another loan extension and modification fee.  Am. Compl. ¶ 66.  Remus had

"numerous heated conversations" with WCP in which Remus objected to paying yet another

extension fee for a third loan modification.  Am. Compl. ¶ 66.  Remus requested a payoff

statement to complete the home sale, but it says that WCP provided a statement reflecting "close

to $300,000 in additional fees."  Am. Compl. ¶¶ 68–69.  Remus "questioned" "these unjustified

junk fees" in "another heated conversation" with WCP.  Am. Compl. ¶¶ 70–72.  "Upon the last

heated conversation," WCP "hinted" that it "would be foreclosing on the Property." Am. Compl. ¶ 73. WCP then refused to provide a payoff statement to Remus's title company, so it could not sell the property or refinance. Am. Compl. ¶¶ 73–77.

In August 2024, WCP foreclosed on the Tennessee Avenue home. Am. Compl. ¶ 78. It bought the property for $1,000, re-listed it, and asked the same real estate agent Remus had used to sell the property. Am. Compl. ¶¶ 78–79.

Remus then filed in this Court seeking relief for various alleged violations of federal and D.C. law, beginning when it signed the original loans with WCP and extending through the foreclosure. Compl., ECF No. 1. After Remus amended its Complaint as of right, WCP responded with a motion to dismiss. Mot. Dismiss, ECF No. 15. The briefing is ripe for consideration.

## II.

The Court has subject-matter jurisdiction over the federal claims under 28 U.S.C. § 1331 and over the D.C. law claims under 28 U.S.C. § 1332. The Court will dismiss Remus's federal claims due to res judicata. *See infra* Part IV. Though neither party raised the issue, the Court may properly exercise jurisdiction over Remus's remaining D.C. law claims under the diversity statute. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.").

Remus only alleged subject-matter jurisdiction under 28 U.S.C. § 1331 because he raised a federal question under RESPA and TILA. Am. Compl. ¶ 3. Ordinarily, once the basis for federal-question jurisdiction goes away—here, once RESPA and TILA are declared res judicata—a district court should dismiss pendent state-law claims. *Araya v. JPMorgan Chase*

*Bank, N.A.*, 775 F.3d 409, 418–19 (D.C. Cir. 2014) (stating that district courts "ha[ve] an obligation to exercise [their] discretion to remand the case to the District of Columbia courts once the federal question, like Elvis, ha[s] left the building."). But when an alternative basis for jurisdiction is apparent from the face of the complaint, the court should retain jurisdiction. *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasse Panel*, 606 F.3d 780, 788 (D.C. Cir. 2010).

Here, diversity jurisdiction is obvious from the face of the complaint. Remus was formed in Washington, D.C., and WCP was formed in Delaware. Am. Compl ¶¶ 1–2. Remus's primary place of business is in Maryland, and WCP's is in Virginia. Am. Compl., case caption. While Remus does not allege a specific amount in controversy, his demands total well over $75,000, because he wants at least $400,000 for construction costs and $300,000 for loan fees. Am. Compl. ¶¶ 63, 69. So the Court must exercise diversity jurisdiction under 28 U.S.C. § 1332 over the remaining state-law claims.

### III.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A court must "draw all reasonable inferences from those allegations in the plaintiff's favor." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017). While the Court must accept the facts in the complaint as true, it need not accept conclusory allegations that simply re-state the legal standard. *Ashcroft*, 556 U.S. at 678.

The Court applies the motion-to-dismiss standard even though Remus would rather convert the proceeding to summary judgment. Remus alleges that WCP has converted its motion to dismiss into a motion for summary judgment by attaching copies of the loan documents and

modification agreements between the parties. Opp'n Mot. Dismiss, ECF No. 17, at 3. But "[d]ocuments that a defendant attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to her claim." *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1025 (D.C. 2007); *accord Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). "The prototypical incorporation by reference occurs where a complaint claims breach of contract, and either party attaches to its pleading an authentic copy of the contract itself. Because the contract is a legally operative document that is a necessary element of the claim, the contract is integral to the plaintiff's claim—it forms the basis for a claim or part of a claim." *Banneker Ventures, LLC*, 798 F.3d at 1133. So the loan documents attached to the motion to dismiss are incorporated by reference into the pleadings.

As another attempt to convert to summary judgment, Remus implies that WCP's attached contracts may be unreliable. Opp'n Mot. Dismiss at 3. Courts consider "the reliability of the documents" attached to motions-to-dismiss. *Banneker Ventures, LLC*, 798 F.3d at 1133–34. Remus's argument fails for two reasons. *First*, proffering a "conclusory assertion" that "does not fully explain the nature of the alleged violations" "fails to preserve the claim." *Abdullah v. Obama*, 753 F.3d 193, 199–200 (D.C. Cir. 2014). Remus asserts in two sentences—with no citations to the record or the challenged loan documents—that Remus has never seen "some" of the documents, without explaining which ones, and that "[s]ome" have a fake signature. Opp'n Mot. Dismiss at 3 ("[S]ome of them Plaintiff has never seen. Some of the exhibits pretend to have Plaintiff's signature that is not Plaintiff's signature."). This fails to explain which documents are allegedly false and, glaringly, whether they misrepresent the parties' agreement in any way.

5

*Second*, courts are "not bound" to "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006).  The Complaint verifies these documents' authenticity and makes no allegation that materially undermines them.  Am. Compl. ¶¶ 19–36 (affirming that Plaintiff signed the loan documents for two purchase money deeds of the same amounts reflected in WCP's attached loan documents); Am. Compl. ¶ 33 (reflecting the same quote from the loan document: "[This is] a home equity line deed of trust.  Default on payments may result in the loss of your home."); *accord* Deed of Trust, ECF No. 15-3 (containing the same quote); Deed of Trust, ECF No. 15-5 (same).

The Complaint alleges only three immaterial inaccuracies: first, that the closing documents sometimes named one instead of both members of the LLC; second, that the documents did not set the monthly payment, an uncontested issue in the case; third, that after Remus's sole member-owner Solon Phillips provided a wet signature in person, WCP followed up via email with copies that did not contain the wet signature.  Am. Compl. ¶¶ 25–32.  None of these allegations suggest that the contracts do not represent the material terms of the parties' agreement.  The briefing very carefully does not do that either.  Opp'n Mot. Dismiss at 3.[1] Accordingly, the Court will consider these documents at the motion-to-dismiss stage.

## IV.

Remus's claims for violations of RESPA and TILA, duress and unconscionability, and declaratory relief must be dismissed because they are precluded.  Claim preclusion, or res judicata, prevents parties from bringing claims that they already brought or could have brought

---

[1] Though it does not bear on the considerations here, the Court notes Remus's unusual choice to file a complaint for breach of contract without a copy of the contract, then to contest opposing party's versions of the contract without, again, providing Remus's preferred version to the Court.

in a prior suit. *Richardson v. McCabe, Weisberg, & Conway, LLC*, 323 A.3d 446, 453 (D.C. 2024). "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980); 28 U.S.C. § 1738. Therefore, if D.C. law would preclude Remus's latest claims, then they are precluded in this Court as well.[2]

Under D.C. law, a party will be precluded if the later litigation involves (1) the same claim; (2) between the same parties; (3) that received a "final judgment on the merits" in the previous litigation. *See Faulkner v. Gov't Emps. Ins.*, 618 A.2d 181, 183 (D.C. 1992). The Court reviews each question in turn.

## A.

Remus's current claims are the same as the claims in the previous suit. Claims are the same if they share a "common nucleus of facts"; it does not matter that they might be based on different legal theories. *Richardson*, 323 A.3d at 453. Sharing a common nucleus of fact means that the events underlying each suit "are related in time, space, origin, or motivation," that "they form a convenient trial unit," or that treating them "as a unit conforms to the parties' expectations." *Id.* at 454 (quoting *Faulkner*, 618 A.2d at 183).

Remus's current action involves the same claims as the prior action. True, the two suits are based on different legal theories. In Superior Court, Remus sued for violations of the Mortgage Lender and Broker Act and the Interest and D.C. Usury Statute. Super. Ct. Order, ECF No. 15-10, at 4–9. Remus alleges, among other things, violations of RESPA and TILA, duress and unconscionability, and seeks a declaratory judgment. Am. Compl. ¶¶ 84–102, 125–46. But

---

[2] "[B]oth our case law and other federal statutes treat the D.C. courts like state courts." *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1124 (D.C. Cir. 2004); *accord Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 351 n.5 (D.C. Cir. 2003).

Remus's current claims and the previous claims share a common nucleus of fact—the making, signing, and modifications of the loan agreements. *See* Am. Compl. ¶¶ 85–102 (Count I alleging defects in signing the original loan closing documents; Count II alleging defects in the second original loan's terms disclosure), 125–46 (Count VI alleging duress and unconscionability in the signature conditions for the original loan documents and the loan modifications signed before June 2024; Count V alleging defects in the same documents); Super Ct. Order at 1–3 (dismissing on the merits claims resting on the original loan documents and both loan extensions). Because all the claims share a "common nucleus of facts," they are considered the same for res judicata purposes.

## B.

Remus's case involves the same parties as the Superior Court case. The party against whom preclusion is enforced must have either been a party to the previous suit or be in privity with a party to the previous suit. *Richardson*, 323 A.3d at 457. The instant case deals with the same parties as the prior case because Remus sued WCP in both actions. Am. Compl. ¶ 2; Super. Ct. Order at 1.

## C.

The Superior Court case resulted in a "final judgment on the merits," so Remus will be precluded from bringing this second action. D.C. law considers an involuntary dismissal to be on the merits unless the order states otherwise or the case is merely dismissed for lack of jurisdiction or failure to join a party. D.C. Super. Ct. R. 41(b); *Clay v. Faison*, 583 A.2d 1388, 1390 (D.C. 1990).

Remus's prior case ended in a final judgment. The Superior Court dismissed the case for failing to state a claim because the statutes Remus claimed WCP violated did not apply to the

loans.  Super. Ct. Order *passim*.  This dismissal did not mention lack of jurisdiction or failure to join a party.  *Id.*  Instead, it engaged with the substance of Remus's claims and found them to be lacking.  *Id.*  The order also does not specify that it was dismissed without prejudice.  *Id.*  So, under D.C. Superior Court Rule 41(b), it was dismissed on the merits.

WCP's motion to dismiss will therefore be granted as to Remus's claims for violations of RESPA and TILA, duress and unconscionability, and declaratory relief because these claims are barred by res judicata.  Mot. Dismiss at 14–16.

## V.

Remus's remaining claims for breach of contract, promissory estoppel, and unjust enrichment are not barred by res judicata because they do not arise from the same common nucleus of fact as the claims he raised before.  The first suit was based on the making, signing, and modification of the loan agreements.  *See supra* Section IV.A.  The remaining claims, however, stem from the foreclosure on the property, which took place after the Superior Court suit.  *Compare* Super. Ct. Order at 10 (issuing on June 17, 2024) *with* Am. Compl. ¶¶ 68–78 (describing the foreclosure in late August).  "The fact that gave rise [to the Plaintiff's new claims] had not even occurred at the time the [previous] [a]ction was litigated . . . .  [A] prior judgment cannot be given the effect of extinguishing claims which did not even then exist."  *Calomiris v. Calomiris*, 3 A.3d 1186, 1192 (D.C. 2010) (cleaned up).  Remus may bring these claims because they are based on facts that had not yet occurred when the first suit was filed.  The Court accordingly considers them on the merits.

## A.

Remus first alleges "breach of contract in violation of U.C.C. § 1-304: Obligation of Good Faith."  Am. Compl. Count III.  It contends that WCP promised to wait for payment until

the house sold, but then "broke its promise" by refusing to provide a payoff statement to Remus's title company and foreclosing on the property. Am. Compl. ¶¶ 104–07.

But the Uniform Commercial Code (U.C.C.) cannot save Remus from the bitter aftertaste of his dealings with WCP. The U.C.C. (and the D.C. version of it) only applies to loans secured by personal property; it excludes loans secured by real property. U.C.C. § 9-109(11)(A) (defining the scope of the U.C.C. Secured Transactions chapter to exclude "liens on real property" and security agreements covering "real property"); *id.* § 9-604(a)(2), (b)(3) (excluding security agreements covering both real and personal property from the U.C.C. if the secured party proceeds "in accordance with the rights with respect to the real property"); D.C. Code § 28:9-109(d)(11); *id.* § 28:9-109(d)(11)(D) (copying U.C.C. language). The U.C.C. does not apply to Remus's loans because they are secured by real property. Purchase Money Deed of Trust, ECF No. 15-3, at 1 ("This is a home equity credit line deed of trust."); Purchase Money Deed of Trust, ECF No. 15-5, at 1 (same).

Still, under D.C. common law, there is an implied covenant of good faith in every contract. *Berlin v. Bank of Am.*, 101 F. Supp. 3d 1, 17 (D.D.C. 2015); *Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 20 (D.D.C. 2012). Even construing Remus's U.C.C. claim as alleging a violation of this covenant, it fails. There is no basis for a claim of bad faith when the other party's actions conform to the terms of the contract. *See Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013).

WCP's foreclosure conformed to the terms of the contract. The loan agreements state "Default on payments may result in the loss of your home." Purchase Money Deed of Trust, ECF No. 15-3, at 1; Purchase Money Deed of Trust, ECF No. 15-5, at 1 (same). Remus admits that it was in default for a time and that it had already signed multiple loan modifications

extending the maturity date from September 2023 to March 2024, then to June. Am. Compl. ¶¶ 44, 59, 66; Loan Modification, ECF No. 15-6, at 1–2 (extending the maturity date from September 2023 through March 2024 for the $820,000 loan); Loan Modification, ECF No. 15-7, at 1–2 (same for the $50,000 loan); Loan Modification, ECF No. 15-8, at 1–2 (extending the $820,000 loan maturity date from March through June 12, 2024); Loan Modification, ECF No. 15-9, at 1–2 (same for the $50,000 loan). Remus then failed to make payments between June and early August. Am. Compl. ¶¶ 64–77. Because Remus was clearly in default and had gone beyond the bounds of the written loan modifications, WCP had the right to foreclose. The foreclosure was not in bad faith.

Remus also complains that another WCP action evidenced bad faith. Recall that WCP provided a payoff statement to Remus but refused to provide the same statement to Remus's title company, blocking the sale of the property. *See supra* Part I; Am. Compl. ¶¶ 73–77. Remus claims this refusal was in bad faith. Am. Compl. ¶ 107. But the contract contemplates "[o]ther [r]emedies" upon default, including "such other steps to protect and enforce their respective rights." First Loan Agreement, ECF No. 15-3, at 13. This catch-all phrase easily covers WCP's refusal to provide a payoff statement to the title company. The refusal "protect[ed] and enforce[d] [WCP's] respective rights" because it wanted to foreclose the property rather than allow Remus to sell it. Am. Compl. ¶¶ 73–77. Again, there is no violation of the good faith covenant when a party's actions conform to a contract. *Abdelrhman*, 76 A.3d at 891.

In sum, because all of WCP's alleged bad-faith actions conform to the contract, Remus has not stated a claim for breach of the covenant of good faith.

**B.**

Remus also fails to state a claim for promissory estoppel. At first glance, the company's allegations appear promising. Successful plaintiffs must allege: (1) a promise, (2) reasonable reliance on the promise, and (3) detriment because of the reliance. *Simard v. Resol. Tr. Corp.*, 639 A.2d 540, 552 (D.C. 1994). Remus alleges that WCP promised to accept all loan payments after the property sold. Am. Compl. ¶ 47. Remus relied on that promise by not making any payments, and it claims that this reliance was reasonable because the parties made and honored a similar agreement for a different property. Am. Compl. ¶¶ 48–50, 122. Remus indisputably suffered detriment when WCP foreclosed on the property. Am. Compl. ¶¶ 116, 121, 123.

But Remus's claim fails another threshold inquiry. Generally, promissory estoppel does not apply in the face of an express contract because the written terms wholly "govern[] the parties' [] relationship." *See Said v. Nat'l R.R. Passenger Corp.*, 183 F. Supp. 3d 71, 78 (D.D.C. 2016) (collecting cases); Mot. Dismiss at 14. Courts will sometimes allow parties to plead promissory estoppel in the alternative at the motion-to-dismiss stage, but that is typically when the existence of a contract is disputed; in other words, parties can say that if there was no contract, then the court should honor promissory estoppel. *See, e.g.*, *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010); *Berlin*, 101 F. Supp. 3d at 15–16. But when the existence of a contract is clear, courts should look to the written agreement to determine the parties' obligations. *See Said*, 183 F. Supp. 3d at 78; *see also Obelisk Corp. v. Riggs Nat. Bank of Washington, D.C.*, 668 A.2d 847, 854 n.4 (D.C. 1995) (holding that estoppel cannot prevent a party from relying on the express terms of the contract).

Remus cannot claim promissory estoppel because an express contract governed the parties' relationship. *See* Loan Agreements, ECF Nos. 15-2, 15-3, 15-4, 15-5. Even if the Court

assumed the original written loan contracts did not cover *this specific* alleged promise to accept late payments, Remus still could not claim promissory estoppel because the loan *modifications* constitute new written contracts that clearly establish the date of maturity.  After WCP allegedly promised to accept payments after the sale of the property, Remus signed four separate loan modification contracts extending the maturity dates to March 2024, then June.  Am. Compl. ¶¶ 44, 59, 66; Loan Modifications, ECF Nos. 15-6, 15-7, 15-8, 15-9; *see supra* Section IV.A (listing loan modification contracts).  Remus offered consideration for those extensions in the form of significant loan fees.  Am. Compl. ¶¶ 69–71; *see supra* Part I.  These express written contracts govern the parties' relationship as to the date of maturity and default.  The alleged promise related directly to the date of maturity and default.  Am. Compl. ¶ 47.[3]  WCP will not be estopped from relying on its express rights.

Even if the express contracts did not prevent Remus from bringing a promissory estoppel claim, it would still fail.  Reliance on a promise must be reasonable in the context in which it is made.  *See Granfield v. Cath. Univ. of Am.*, 530 F.2d 1035, 1040 (D.C. Cir. 1976) (finding that professors' reliance on a promise to raise salaries was not reasonable because of the precatory context, on clear error review).  Remus's reliance was not reasonable in the context of the loan modifications.  The company alleges that WCP promised to accept payments after the sale of the property, but after that promise, WCP subsequently required Remus to sign four separate loan modification contracts bumping the two loans' dates of maturity.  Am. Compl. ¶¶ 47, 51; Loan Modifications, ECF Nos. 15-6, 15-7, 15-8, 15-9.  Relying on an informal promise that payments would be due upon sale was unreasonable when the parties later signed multiple formal

---

[3] Remus contends that because "both parties did not sign the Notes," there "was no contract."  Opp'n Mot. Dismiss at 6.  But the Complaint specifically agrees that Remus signed closing documents, Am. Compl. ¶ 23, two Purchase Money Deeds of Trust, Am. Compl. ¶ 34, and the loan modification, Am. Compl. ¶¶ 51, 59.  As before, the Court need not make any inferences that the Complaint does not support.  *See supra* Part III.

agreements clarifying that the maturity date was a calendar date. And that is especially so when Remus admittedly had "numerous heated conversation[s]" with WCP while trying to get another loan extension in summer 2024. Am. Compl. ¶¶ 66–70. It was not reasonable for Remus to expect that WCP would forgo another formal loan modification when it had already required one twice and fought with him about signing a third.

So the Court will grant WCP's motion to dismiss Remus's promissory estoppel claim.

## C.

For similar reasons, Remus's unjust enrichment claim also fails. To state a claim for unjust enrichment, a plaintiff must allege: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit would be unjust. *Plesha*, 725 F. Supp. 2d at 111 (citing D.C. law). But unjust enrichment is only available as a remedy if no express or implied contract exists. *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 247 (D.C. Cir. 1996).

Here, an express contract existed that governed each benefit that Remus claims to have afforded WCP: the foreclosure on the property and the renovation. Loan Agreement, ECF 15-3, at 1 ("Default on payments may result in the loss of your home."); *id.* at 3 (defining "mortgaged property" to include "improvements," "fixtures" and other "appliances"); Loan Modification, ECF No. 15-6, at 1 (making the loan "in connection with the real property and improvements thereon"); Loan Modification, ECF No. 15-7, at 1 (same). Because an express contract allowed WCP to foreclose on the house, improvements and all, WCP has not been unjustly enriched. Remus's claim must fail.

## VI.

In sum, the Court will grant WCP's motion to dismiss as to Counts I, II, V, and VI because they are barred by res judicata.  The Court dismisses these counts with prejudice, as WCP requests, because Remus could not allege other facts that would "possibly cure the deficiency."  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012).  Remus could not allege any facts that would move the loan and modification signings forward in time so that they occurred after the Superior Court Order issued in June 2024.  *See supra* Part IV.

Counts III, IV, and VIII,[4] while not barred by res judicata, fail to state a claim under Fed. R. Civ. P. 12(b)(6).  Because dismissal with prejudice is a high standard, these counts will be dismissed without prejudice.  *Rollins*, 703 F.3d at 131.  An appropriate Order will issue today.


Dated: August 25, 2025                              _____
                                                    TREVOR N. McFADDEN, U.S.D.J.

---

[4] There is no Count VII because Remus misnumbered its Complaint.